IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

RHONDA A. JONES-BELL,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

No. C12-0033

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.      **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.    *Jones-Bell's Education and Employment Background* . . . . . . . . . . 5
      B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 5
            1.    *Jones-Bell's Testimony* . . . . . . . . . . . . . . . . . . . . . 5
            2.    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . 6
      C.    *Jones-Bell's Medical History* . . . . . . . . . . . . . . . . . . . . . . 7

V.     **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 13
      B.    *Objections Raised by Claimant* . . . . . . . . . . . . . . . . . . . . . 15
            1.    *Dr. Keating's Opinions* . . . . . . . . . . . . . . . . . . . . . 15
            2.    *Consideration of Obesity* . . . . . . . . . . . . . . . . . . . . 18
            3.    *Dr. Woodard's Opinions, RFC Assessment, and Hypothetical*
               *Question* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
      C.    *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII.   **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Rhonda A. Jones-Bell on March 29, 2012, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Jones-Bell asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Jones-Bell requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

On May 29, 2008, Jones-Bell applied for both disability insurance benefits and SSI benefits. In her applications, Jones-Bell alleged an inability to work since March 8, 2008 due to asthma, sleep apnea, diabetes, depression, high blood pressure, anemia, acid reflux, allergies, and anxiety. Jones-Bell's applications were denied on August 15, 2008. On December 18, 2008, her applications were denied on reconsideration. On February 3, 2009, Jones-Bell requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 9, 2010, Jones-Bell appeared via video conference with her attorney before ALJ John E. Sandbothe for an administrative hearing. Jones-Bell and vocational expert Marian S. Jacobs testified at the hearing. In a decision dated November 19, 2010, the ALJ denied Jones-Bell's claims. The ALJ determined that Jones-Bell was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Jones-Bell appealed the ALJ's decision. On January 27, 2012, the Appeals Council denied Jones-Bell's request for review. Consequently, the ALJ's November 19, 2010 decision was adopted as the Commissioner's final decision.

On March 29, 2012, Jones-Bell filed this action for judicial review. The Commissioner filed an Answer on July 6, 2012. On August 6, 2012, Jones-Bell filed a brief arguing that there is not substantial evidence in the record to support the ALJ's

finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy.   On October 4, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 21, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review.  42 U.S.C. § 405(g).  Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).  Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." Id.

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted).  Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" Id. (quoting Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010)); see also Brock v. Astrue, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." Vester v. Barnhart, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted).  The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

4

## IV. FACTS

### A. Jones-Bell's Education and Employment Background

Jones-Bell was born in 1973. She is a high school graduate. She also spent three years in college, but did not obtain any type of degree.

The record contains a detailed earnings report for Jones-Bell. The report covers the time period of 1991 to 2009. From 1991 to 2004, Jones-Bell earned between $309.23 (1991) and $14,233.05 (2000). She has no earnings since 2005.

### B. Administrative Hearing Testimony

#### 1. Jones-Bell's Testimony

At the administrative hearing, Jones-Bell's attorney asked Jones-Bell to discuss her difficulties with asthma. Jones-Bell testified that "I get shortness of breath. I can't walk no more than two blocks at a time, walk upstairs without getting short of breath, or sit down for long periods of time without getting short of breath sometimes."[1] Jones-Bell stated that she uses a BIPAP machine, nebulizer, and inhalers to treat her asthma. She also indicated that extreme hot and cold weather aggravate her asthma.

Jones-Bell's attorney also asked Jones-Bell to discuss her weight and back problems:

> Q:  So, you've got -- okay. Because of your weight, do you have -- any functional limits now?
>
> A:  Yes. I can't walk for long periods of time and sit for long periods of time because of my knee and all the weight pressure on my knees. And also, I have back problems.
>
> Q:  What -- tell me more specifically about your back.
>
> A:  They said when they took the CAT Scan that I had a, a bulging disc in the center of my back. So, I have to go to the emergency maybe once every six months to get an epidural in my back to ease that pain. It's like a cortisone shot.
>
> Q:  Does it help once you get those?
>
> A:  Yes, it does.

---

[1] Administrative Record at 76.

Q:    Have you have -- do you still have pain afterwards or
      does it totally subside?
A:    I have pain afterwards.  It comes and goes.
Q:    Okay.  And so, how does that affect your functioning?
A:    Well, the medicine makes me sleepy. And then I have
      to, like, slow down my walking or slow down whatever
      function that I'm doing at that time.

(Administrative Record at 80.)  With regard to her knee problems, Jones-Bell testified that

"[t]hey get sore or you can feel them getting tight . . . too much pressure is on them. So,

I try not to walk as much.  I try not to sit in a sitting position so where they're bent, as

much as they are."[2]

Lastly, Jones-Bell's attorney inquired whether Jones-Bell believed that she could

work a full-time job:

Q:    If you had an eight-hour day, five day a week job, do
      you think you'll be able to get there on a regular basis?
A:    No.
Q:    Stay there?
A:    No.
Q:    What do you think would be the main issue with being
      able to maintain regular work?
A:    Sitting down, being sedentary.  Trying to just bend over
      to pick up a paperclip.   Also, with my asthma,
      depending on the work environment -- because I can't
      be around dust or smoke.
Q:    So, it has to be a clean environment.
A:    Yes.

(Administrative Record at 87.)

### 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Marian S. Jacobs with a

hypothetical for an individual who:

could lift 20 pounds occasionally, 10 pounds frequently.  She
could only be on her feet two hours total during a work day.

---

[2] *Id.* at 82.

> She could occasionally balance, stoop, crouch, kneel, crawl,
> or climb.  No extremes of heat, cold, humidity, dust, or
> fumes.  I would limit her to simple, routine, repetitive work.
> Superficial contact with the public, regular pace.

(Administrative Record at 92).  The vocational expert testified that under such limitations, Jones-Bell could perform the following work:  (1) order clerk (200 positions in Iowa and 18,500 positions in the nation), and (2) surveillance system monitor (200 positions in Iowa and 25,000 positions in the nation).  The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical, except that the individual would "need a slow pace for at least one-third of the day, [and] two or more unscheduled breaks per day."[3]  The vocational expert answered that under such limitations, Jones-Bell would be precluded from competitive employment.

### C. Jones-Bell's Medical History

On February 13, 2007, Jones-Bell underwent an lumbosacral spine MRI after complaining of back and leg pain.  The MRI showed "minimal bulging of the annulus of L4-5 without impingement on the central canal or neural foramina."  Dr. J.L. Floyd diagnosed Jones-Bell with minimal disc bulging at L4-5 without associated stenosis or impingement.

On February 28, 2007, Jones-Bell met with Dr. Edwin W. Lojeski, D.O., complaining of low back and leg pain.  Dr. Lojeski noted that:

> When the pain comes on it is quite intense, 7 to 10.  [Jones-
> Bell] feels that she can not [] walk.  She can not define what
> brings this pain on.  The pain will last from 10 to 20 minutes
> and then seems to decrease after she takes some Tylenol.  The
> pain has not been improving with treatment.  On average her
> pain is 6/10 in intensity when it is present.

(Administrative Record at 463.)  In considering Jones-Bell's back pain, Dr. Lojeski opined that:

---

[3] Administrative Record at 93.

> The etiology is unclear.  Some of her back pain may be
> mechanical in nature due to her obesity.  It is possible that her
> degenerative disk disease is causing some of her lower
> extremity symptoms.  This is not classic radicular picture and
> that it involves her lower extremity and is very episodic and
> short lasting in duration.  Still, some of her pain maybe
> coming from her degenerative disease.

(Administrative Record at 464.)  Dr. Lojeski recommended an epidural steroid injection
as treatment.  On that same date, Dr. Lojeski proceeded to administer an epidural for
Jones-Bell.  On April 2, 2007, Jones-Bell met with Dr. Lojeski for a follow-up
appointment.  She reported "good improvement" following the epidural with about "75%"
decrease in pain lasting approximately 2-3 weeks.  Dr. Lojeski administered a second
epidural as treatment.

On August 25, 2007, Jones-Bell presented at the Mercy Medical Center Emergency
Department, complaining of wheezing and an asthma attack.  Following an Albuterol
nebulizer treatment, Jones-Bell was discharged home in stable condition.  On September
13, 2007, Jones-Bell met with her treating physician, Dr. Colleen Keating, M.D.,
regarding a recent asthma flare.  Prior to meeting with Dr. Keating, Jones-Bell presented
at the emergency department with another asthma attack.  She was prescribed Prednisone
as treatment, but did not take it.  Dr. Keating opined that "[h]er asthma is such that it
could kill her if she does not follow her appropriate instructions or if she does not relay
to me when she is getting [short of breath] or her peak flows are going down."[4]
Dr. Keating treated Jones-Bell with a Prednisone "burst and taper."  Dr. Keating further
opined that:

> we are going to need to be more aggressive with management
> of her asthma.  I think her overall health will improve as well
> if we can get her asthma well controlled.  Don't know if it is
> triggered a bit by her acute worsening of depression and

---

[4] Administrative Record at 731.

> anxiety with school work, assignments, some stress there and
> in regards to that I will giver her some Xanax.

(Administrative Record at 731.)

In a letter dated June 17, 2008, Dr. Keating provided Disability Determination Services ("DDS") with information regarding Jones-Bell's physical condition. Dr. Keating outlined Jones-Bell's diagnoses, including severe asthma, peripheral edema, obstructive sleep apnea, depression, morbid obesity, and hypertension. Dr. Keating opined that:

> With her medical conditions, I don't know that she could carry
> more than 20 lbs at any given time. She could sit for
> prolonged amounts of time but standing or walking I think
> would be limited to no more than five minutes an hour. As far
> as climbing, kneeling or crawling, I think that is not something
> that she is able to do.
>
> For a work environment, she should not be exposed to dust,
> fumes, extreme temperatures. I think she can remember and
> understand instructions and interact appropriately with
> supervisors and use good judgment.
>
> The majority of her limitations are primarily physical with the
> asthma being so severe and her obesity being so severe at this
> time I think she would be unable to perform much more than
> a completely non physical job but probably not anything that
> would require an 8 hour work day.

(Administrative Record at 585.)

On July 15, 2008, at the request of DDS, Jones-Bell met with Dr. Roger E. Mraz, Ph.D., for a psychological evaluation. Upon examination, Dr. Mraz found that Jones-Bell had a "marked" impairment in the area of working memory. Dr. Mraz opined that such an impairment "indicates that [Jones-Bell] has difficulty focusing her attention, concentrating, and remembering information long enough to use it for another purpose, such as doing mental computations in arithmetic."[5] On the Beck Depression Inventory-II

---

[5] Administrative Record at 629.

test, Jones-Bell showed "significant" symptoms of depression. Dr. Mraz diagnosed Jones-Bell with adjustment disorder with depression. Dr. Mraz concluded that:

> [Jones-Bell's] work history suggests that she should have no difficulty getting along with supervisors, coworkers, and the public. [Jones-Bell] is an obese woman with multiple physical problems, which impact negatively on her ability to manage her self care needs and the household chores. . . . [S]he had no difficulty remembering and carrying out simple instructions at a reasonable pace.
>
> [Jones-Bell] and her family experienced significant losses in Hurricane Katrina, prompting their move to Cedar Rapids. [Jones-Bell] has experienced significant symptoms of depression as a result of that experience.
>
> [Jones-Bell's] physical problems certainly impact negatively on her employability[.] . . .

(Administrative Record at 629.)

On July 22, 2008, Dr. Carole Kazmierski, Ph.D., reviewed Jones-Bell's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Jones-Bell. On the Psychiatric Review Technique assessment, Dr. Kazmierski diagnosed Jones-Bell with adjustment disorder with depressed mood. Dr. Kazmierski determined that Jones-Bell had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kazmierski determined that Jones-Bell was moderately limited in her ability to: carry out detailed instructions and maintain attention and concentration for extended periods. Dr. Kazmierski concluded that:

> The mental impairment in this case is an adjustment disorder with depression. . . . [Medical evidence] indicates that [Jones-Bell] has had treatment for depression since spring 2007. She is noted to be stable on medication. Recent psychological evaluation suggests that [she] would have some difficulty mastering highly complex material. She can understand and

> remember instructions, many at the detailed level. Concentration is likely to be somewhat variable depending on [her] mood and level of fatigue. No restrictions in social functioning are noted.

(Administrative Record at 647.)

On August 11, 2008, Dr. Melodee Woodard, M.D., reviewed Jones-Bell's medical records and provided DDS with a physical RFC assessment for Jones-Bell. Dr. Woodard determined that Jones-Bell could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Woodard also determined that Jones-Bell could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Woodard found that Jones-Bell should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. Dr. Woodard found no manipulative, visual, or communicative limitations. Dr. Woodard concluded that "[t]he objective [and] functional evidence provided by the longitudinal record supports capacity to work [within] limitations outlined above."[6]

On October 9, 2008, at the request of Jones-Bell's attorney, Dr. Keating filled out a "Pulmonary Residual Functional Capacity Questionnaire." Dr. Keating diagnosed Jones-Bell with asthma, edema, allergic rhinitis, GERD, obstructive sleep apnea, depression, obesity, and hypertension. Dr. Keating identified the following symptoms for Jones-Bell: shortness of breath, chest tightness, wheezing, episodic acute asthma, fatigue, and coughing. Dr. Keating indicated that precipitating factors for acute asthma attacks, include upper respiratory infection, allergens, exercise, and stress. Dr. Keating opined that Jones-Bell's experiences of pain would "frequently" interfere with her attention and concentration for performing even simple work tasks. Dr. Keating believed that Jones-Bell

---

[6] Administrative Record at 656.

was capable of performing a low stress job. Dr. Keating rated Jones-Bell's prognosis as "fair." Dr. Keating found that Jones-Bell could: (1) walk 1 block without rest or pain; (2) sit for 1 hour at a time before needing to get up; (3) stand for 5 minutes before needing to sit down or walk; (4) stand/walk for less than 2 hours in an eight-hour workday; (5) sit for about 2 hours in an eight-hour workday; (6) rarely lift more than 10 pounds and occasionally lift 10 pounds; and (7) rarely twist, stoop, crouch, and climb stairs. Dr. Keating also determined that Jones-Bell should avoid all exposure to: extreme cold, extreme heat, cigarette smoke, perfumes, solvents and cleaners, fumes, odors, and gases, dust, and chemicals. Lastly, Dr. Keating opined that Jones-Bell would likely miss more than four days of work per month due to her impairments or treatment for her impairments.

In a letter dated November 1, 2008, Dr. Keating provided DDS with information regarding Jones-Bell's alleged disability. Dr. Keating opined that:

> I do think [Jones-Bell's] work related abilities are significantly compromised because of impairment due to her . . . medical problems. She cannot carry weight of any kind. I don't think she could stoop, climb, knee[l] or crawl at all. She could stand, walk and sit for intermittent amounts of time. I wouldn't want her doing anything for more than 45 minutes in terms of walking or sitting and I don't think she could stand for more than 30 minutes at a time. . . . She should not be around any extremes of temperature or exposure to dust, fumes or hazardous materials or chemicals of any kind that could set off her asthma. . . .
>
> With regard to her mental ability, she is easily stressed and does become anxious. She fatigues quite easily and she does have I think a decreased attention span. She does work well with others and has good judgment . . . but I don't think she would have the ability to stay on task or focus for an eight hour day as she does get overwhelmed.

(Administrative Record at 687.)

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Jones-Bell is not disabled.  In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations.  *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007).  The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity.  If so, the claimant is not disabled.  Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months.  Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments.  If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled.  However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work.  If so, the

13

> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Jones-Bell had not engaged in substantial gainful activity since March 8, 2008. At the second step, the ALJ concluded from the medical evidence that Jones-Bell had the following severe impairments: asthma, obesity, sleep apnea with use of a CPAP machine, diabetes mellitus, hypertension, L4-L5 disc bulge, and adjustment disorder with depressed mood. At the third step, the ALJ found that Jones-Bell did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Jones-Bell's RFC as follows:

> [Jones-Bell] has the residual functional capacity to perform
> light work . . . except she can lift and carry 20 pounds
> occasionally and ten pounds frequently. She can be on her feet
> a total of two hours in and [*sic*] eight hour work day. She can

> occasionally balance, stoop, kneel, and climb.  She is limited
> to simple, routine and repetitive work.

(Administrative Record at 16.)  Also at the fourth step, the ALJ determined that Jones-Bell

could not perform her past relevant work.  At the fifth step, the ALJ determined that based

on her age, education, previous work experience, and RFC, Jones-Bell could work at jobs

that exist in significant numbers in the national economy.  Therefore, the ALJ concluded

that Jones-Bell was not disabled.

### B.  Objections Raised by Claimant

Jones-Bell argues that the ALJ erred in three respects.  First, Jones-Bell argues that

the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Keating.

Second, Jones-Bell argues that the ALJ failed to properly consider her obesity in making

his RFC assessment for her.  Lastly, Jones-Bell argues that even though the ALJ gave

"significant weight" to the opinions of Dr. Woodard, a DDS non-examining doctor, the

ALJ failed to incorporate all of her work related limitations into his RFC assessment and

the hypothetical question posed to the vocational expert.

### 1.    Dr. Keating's Opinions

Jones-Bell argues that the ALJ failed to properly evaluate the opinions of her

treating physician, Dr. Keating.  Specifically, Jones-Bell argues that the ALJ's reasons for

discounting Dr. Keating's opinions are not supported by substantial evidence on the record.

Jones-Bell concludes that this matter should be remanded for proper consideration of

Dr. Keating's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating

physicians' opinions are inconsistent with substantial evidence on the record." *Travis v.

Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).  The

opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to
> substantial weight.  A treating physician's opinion regarding
> an applicant's impairment will be granted controlling weight,
> provided the opinion is well-supported by medically acceptable

> clinical and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ provides a cursory review of Dr. Keating's opinions.[7] In discussing these two pieces of medical evidence, the ALJ simply states "Dr. Keating seems

---

[7] *See* Administrative Record at 18 (providing overviews of Dr. Keating's 2008 letter and pulmonary RFC questionnaire).

to rely on the subjective complaints of the claimant in rendering her opinion and her treating notes do not indicated [*sic*] the claimant's limitations are so severe."[8] In weighing Dr. Keating's opinions the ALJ states "[o]nly some weight is given to the opinion of Dr. Keating in that the contemporaneous treating notes do indicate such extreme recommendations."[9]

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has not fully met these requirements.

Significantly, the ALJ does not address or explain his reasons for rejecting the opinions of Dr. Keating. The ALJ simply summarizes Dr. Keating's opinions from a letter to DDS and a "Pulmonary Residual Functional Capacity Questionnaire" that Dr. Keating filled out for Jones-Bell's attorney. After summarizing these documents, the ALJ simply makes conclusory observations that Dr. Keating's opinions rely on Jones-Bell's subjective complaints and "her treating notes do not indicated [*sic*] the claimant's limitations are so severe."[10] The ALJ does not address, however, any medical evidence in the record, including Dr. Keating's own treatment notes, or what inconsistencies there are between

---

[8] Administrative Record at 18.

[9] *Id*. Because the ALJ determined that Jones-Bell is not disabled, the Court assumes that the ALJ meant to say that "[o]nly some weight is given to the opinion of Dr. Keating in that the contemporaneous treating notes do [*not*] indicate such extreme recommendations." *Id*. (emphasis added.)

[10] Administrative Record at 18.

Dr. Keating's opinions and her treatment notes and/or the overall medical evidence in the record. Even a cursory review of the medical evidence demonstrates that Jones-Bell has dealt with asthma since 2005, back and leg pain since 2007, and obesity since 2008. Jones-Bell has been treated with an array of medications, ranging from the simple to the complex, for her asthma. Jones-Bell has also tried various treatment for her obesity, including a recommendation and plan for undergoing gastric bypass surgery.[11] While this evidence in and of itself may not support a finding of disability, it is, at the very least, evidence which shows some consistency between the record and Dr. Keating's opinions. By failing to specifically address even one instance where Dr. Keating's opinions are inconsistent with her treatment notes or the medical evidence as a whole, the ALJ has made it virtually impossible for the Court to make a determination of whether the ALJ's conclusion regarding Dr. Keating's opinions is supported by substantial evidence on the record. Therefore, the Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Keating's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Keating's opinions and support his reasons with evidence from the record.

## 2.   *Consideration of Obesity*

Jones-Bell argues that the ALJ failed to properly evaluate her obesity. Specifically, Jones-Bell argues that the ALJ failed to fully and fairly develop the record with regard to the effects of her obesity on her other limitations and her RFC assessment. Jones-Bell maintains that this matter should be remanded to further development of the record.

In considering this issue, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is

---

[11] At the time of the administrative hearing and the ALJ's decision in this case, Jones-Bell was trying to lose a certain amount weight before undergoing gastric bypass surgery, in order to have the most success with the surgery. The record contains no information on whether Jones-Bell was able to meet her goal weight and undergo gastric bypass surgery.

a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In particular, with regard to the issue of obesity, Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id*.

In his decision, the ALJ outlines the law for considering a claimant's obesity in making a disability determination:

> The claimant's physical findings indicated a height of 4'8", weight 271 pounds with a body mass index of 56.6. The undersigned has given consideration to Social Security Ruling 02-1p which instructs adjudicators to consider the effects of obesity when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairments identified.

(Administrative Record 19.) The ALJ provides no additional discussion of Jones-Bell's obesity. In particular, the ALJ failed to reach any conclusions regarding Jones-Bell's

obesity and its effect on her functional abilities, or explain how he considered Jones-Bell's obesity in assessing her RFC. *See* SSR 02-1p, 2002 WL 34686281 at *7 ("As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."). Moreover, Jones-Bell's treating physician, Dr. Keating, believes that Jones-Bell's obesity significantly effects her functional abilities. Under such circumstances, the Court concludes that the ALJ failed to fully and fairly develop the record with regard Jones-Bell's obesity. *See Cox*, 495 F.3d at 618. Accordingly, on remand, the ALJ must fully and fairly develop the record with regard to Jones-Bell's obesity. In particular, the ALJ should explain how he reached his conclusions on whether Jones-Bell's obesity effects or does not effect her RFC.

### 3.   *Dr. Woodard's Opinions, RFC Assessment, and Hypothetical Question*

Jones-Bell argues that the ALJ failed to fully and properly evaluate the opinions of Dr. Woodard, a non-examining state agency doctor. Specifically, Jones-Bell maintains that the ALJ failed to include all the limitations imposed by Dr. Woodard in his RFC assessment for Jones-Bell. In particular, Jones-Bell points out that the ALJ failed to include Dr. Woodard's environmental limitations, such as avoidance of extreme cold and heat, fumes, odors, dusts, gases, poor ventilation, and hazards, in her RFC assessment. As a result of not including all of Dr. Woodard's limitations in the RFC assessment, Jones-Bell contends that the ALJ's RFC assessment is not supported by substantial evidence in the record as a whole. Similarly, Jones-Bell argues that the ALJ's hypothetical question to the vocational expert was flawed because the question was based on an improper RFC assessment, and was not based on substantial evidence in the medical record. Jones-Bell concludes that this matter should be remanded so that the ALJ can more fully and fairly develop the record with regard to her RFC, including consideration of the opinions of Dr. Woodard and the hypothetical questions posed to the vocational expert.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d).  If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion:  "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors."  *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)).  An ALJ is also required to "'explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]'"  *Wilcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) (quoting 20 C.F.R. § 404.1527(f)(2)(ii)).

An ALJ also has a duty to develop the record fully and fairly.  *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'"  *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record.").  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis."  *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence.  *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same).  Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'"  *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).  However, "RFC is a medical

21

question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Lastly, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Here, in the hypothetical question posed to the vocational expert, the ALJ included environmental limitations, such as those described by Dr. Woodard and Dr. Keating, in his RFC.[12] In his decision, however, the ALJ failed to include any such limitations in his RFC assessment for Jones-Bell. Because the ALJ gave great weight to the opinions of Dr. Woodard, including her opinion that Jones-Bell is subject to environmental limitations, and the fact that the ALJ included environmental limitations in the hypothetical question posed to the vocational expert, the Court believes that the ALJ should have included environmental limitations in his RFC assessment for Jones-Bell, or explained his reasons for not including such limitations in his decision. Accordingly, on remand, the ALJ must fully and fairly develop the record with regard to Jones-Bell's environmental limitations, especially as they relate to her RFC. *See Cox*, 495 F.3d at 618.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

---

[12] *See* Administrative Record at 92.

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Keating; (2) properly evaluate the effects of Jones-Bell's obesity on her RFC assessment; and (3) properly consider Jones-Bell's environmental limitations as they relate to her RFC. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Keating's opinions, and support his reasons with evidence from the record. The ALJ must also reconsider his RFC assessment for Jones-Bell with regard to her obesity and environmental limitations.

### *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this _12th_ day of February, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA